Worley, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner’s rejection of claims 44 to 47, inclusive, and claim 51 of appellant’s application for a patent on an induction motor. Five claims have been allowed.
The appealed claims read :
44. An induction motor comprising an annular stator and a short-circuited disc-like rotor located beside and facing said stator, the latter having a plurality of spaced poles directed toward one side of said rotor and each having a cross section which is the same in all planes normal to the rotor axis, and a soft-iron sheet covering said poles of said stator and being located between said poles and said rotor.
45. An induction motor according to claim 44, said soft-iron sheet having diminutions of thickness located substantially midway between two> adjacent poles.
*1035 46. An induction motor according to claim 45, said diminutions of thickness being constituted by radially extending notches formed in the surface of the soft-iron sheet which is distant from said rotor.
47. An induction motor according to claim 44, said soft-iron sheet having diminutions of thickness located substantially midway between two adjacent poles, and said diminutions of thickness being formed by radially extending slots.
■ 51. An induction motor according to claim 44, the stator being entirely composed of sintered soft-iron powder.
The references relied on are:
Tanzler, 1,605,796, November 2,1926.
British Patent, 525,026, August 20,1940.
Reardon, 2,247,890, July 1,1941.
Packer, 2,433,390, December 30,1947.
Appellant’s application discloses an induction motor in which the rotor is a flat iron disc covered with copper and mounted for rotation adjacent the flat circular face of a stator member, the rotor and stator members being coaxially arranged. The stator comprises a plurality of spaced poles, each having a uniform cross section in all planes normal to the axis and each being provided with an electrical winding. The poles have flat faces lying in a plane adjacent the rotor. The faces are covered by a soft iron sheet which lies between the poles and the rotor. The portions of the sheet at the middle of the spaces between poles are reduced in cross-sectional area by slotting or by notching the surface which is more distant from the rotor. The stator may be composed of sintered soft-iron powder.
The Tanzler patent shows an induction motor comprising a flat rotor and a stator which, so far as the issues involved in the instant appeal are concerned, are the same in construction and arrangement as those of appellant. Tanzler, however, does not provide a sheet of any kind in the space between his rotor and stator.
The British patent relates to an induction motor of the type in which the rotor is cylindrical and is surrounded by the stator member instead of lying adjacent one face of it, or, in other words, in which the rotor and stator are spaced radially and not axially as in the devices of appellant and Tanzler. The stator includes poles having electrical windings, located at spaced positions around the circumference of the rotor. A shoe ring consisting of a hollow cylinder of metal surrounds, and is slightly spaced from, the rotor and engages and bridges the spaces between the poles, thus forming a path for the magnetic flux. While the patent does not specify that the ring is made of soft iron, it does make it clear that it is of a magnetic material. We agree with the board that, in view of the common use of soft iron in magnetic circuits, it would be the natural procedure to make the shoe ring of the British patent of that material. In order to increase the magnetic reluctance of the ring it is slotted, *1036 perforated, or notched along a line running longitudinally of the cylinder, at a desired position, between each pair of poles. As shown, the notches or slots are not located midway between the poles, but are substantially closer to one than to the other.
The Reardon and Packer patents were cited only to show pole pieces and core members having parts made of sintered iron or steel powder.
Appealed claim 44 was rejected on the patent to Tanzler on the ground that it would not require invention, in view of the British patent, to place a soft-iron sheet between the poles of the stator and the rotor of the Tanzler motor. Tanzler clearly shows all the structure recited by claim 44 except the sheet.
The British patent clearly discloses the idea of locating a layer or sheet of magetic material between the rotor and stator of an induction motor in order to bridge the gaps between the poles and produce a more uniform and efficient distribution of magnetic flux. That idea is applicable to induction motors generally and, in our opinion, the British patent would suggest the use of a soft-iron sheet between the rotor and stator of the Tanzler motor for purposes of better flux distribution. We see no essential difference in principle, so far as that feature is concerned, between motors having the rotor and stator spaced radially, and those in which they are spaced axially.
Appellant argues that the use of the soft-iron sheet between an axially spaced rotor and stator has the additional and unexpected advantage that the electrical characteristics of the motor can be changed by varying the thickness of the sheet and correspondingly adjusting the relative positions of the rotor and stator. The possibility of such variation and adjustment was not suggested in appellant’s application; accordingly he can rely on it only on the theory that it is inherent in Ms structure. It is clear, however, that if it is inherent then it would be equally inherent in the Tanzler structure if modified as above indicated in accordance with the disclosure of the British patent.
It has 'been consistently held that it is not inventive to do something which is suggested by the prior art, even though the results obtained by doing it may be better than would have been expected. In re Gauerhe, 24 C. C. P. A. (Patents) 725, 86 F. 2d 330, 31 USPQ 330; In re Kepler, 30 C. C. P. A. (Patents) 726, 132 F. 2d 130, 56 USPQ 177; and In re Eisenhut, 44 C. C. P. A. (Patents) 974, 245 F. 2d 481, 114 USPQ 287. As was said in the last case “Appellant cannot claim to be the inventor of a result that would flow naturally from the application of the teachings of the prior art.” It follows that since the British patent suggests the desirability of placing a soft-iron sheet between the rotor and .stator of a device, such as that shown by Tanzler, for the purpose of improving the flux dis *1037 tribution, such a modification is not made patentable by the fact that tbe electrical characteristics of the motor may be modified, by using sheets of various thicknesses. Accordingly, claim 44, which calls for nothing more than the use of such a soft-iron sheet in the Tanzler device, was properly rejected.
Claims 45, 46, and 47 are dependent on claim 44 and contain additional limitations as to diminution of the thickness of the soft-iron sheet substantially midway between adjacent poles of the stator. Claim 45 recites such diminution broadly, claim 46 states that it is effected by means of notches, and claim 47 that it is effected by means of slots. The British patent shows the use of either notches or slots in the magnetic sheet to effect a reduction in its effective thickness between adjacent poles. We agree that no invention is involved in that expedient. As shown in the British patent, the reduced portions are not midway between the adjacent poles, but the exact location of those portions is a matter of choice or design. It has not been shown that any new or unexpected result is obtained by placing them midway between the poles. Claims 45, 46, and 47, therefore, define nothing patentable over the combination of references above considered in connection with claim 44.
Claim 51 adds to what is recited in claim 44 the statement that the stator is entirely composed of sintered soft-iron powder. It was rejected on the same references as claim 44 in view of the Packer and Reardon patents which show it to be old to employ sintered iron or steel powder in making magnetic parts. We think that rejection sound, and that it would be obvious in view of Packer or Reardon that the entire stator of Tanzler might be made of sintered soft-iron powder if desired.
The decision of the board is affirmed.